IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

GLOBAL ENGINEERING & )
CONSTRUCTION, LLC, )
)
    Plaintiff, )
)
v. )
)
MERCHANTS BONDING COMPANY, ) CASE NO. CV404-1
)
    Defendant, and )
)
ALL AMERICAN MARKETS, INC., )
)
    Defendant and )
    Counterclaimant in )
    Intervention. )
)

## O R D E R

Before the Court are the parties' Motions in Limine. (Docs. 54 & 55.) For the reasons that follow, Plaintiff Global Engineering and Construction's Motion is **GRANTED IN PART** and **DENIED IN PART**, and Defendant and Counterclaimant-in-Intervention All American Market's Motion is **GRANTED IN PART** and **DENIED IN PART**.

### BACKGROUND

This is a dispute over a construction subcontract that hinges on the meaning of the term "roof deck." Plaintiff Global Engineering ("Global") was the general contractor performing a variety of construction and renovation projects for the United

States Army Corps of Engineers at the Winn Army Community Hospital at Fort Stewart, Georgia. Global entered into a subcontract with Defendant and Counterclaimant-in-Intervention, All American Markets, Inc. ("MOPAC") for the replacement of six roofs. Prior to replacement, the existing roof system was to be removed "down to the roof deck."

On three of the roofs, the existing roof system included a layer of lightweight concrete insulating material. Global alleges that MOPAC breached the contract by refusing to remove and replace this layer of roofing, and by abandoning the project over the dispute about whether removal of the lightweight concrete was within the scope of the contract. MOPAC maintains that this layer of lightweight concrete was the "roof deck," and that it was therefore not obligated to remove it. MOPAC contends that obligating it to remove the lightweight concrete constituted a "cardinal change" in the underlying subcontract — due to the change in costs and methods of performance — and that this cardinal change relieved it from further compliance with the subcontract. MOPAC abandoned the project, and Global relet the job to another contractor. Global is seeking damages to recover its additional costs.

**ANALYSIS**

**A. Plaintiff Global's Motion in Limine**

   1. The Cardinal Change Doctrine

Global asks the Court to preclude Defendant MOPAC from submitting any evidence and argument in support of its cardinal change defense, which is MOPAC's primary defense. In support of this argument, Global relies on Paragraph 5.4 of the Subcontract, which provides for disputes over contract changes.

The doctrine of cardinal change is well-established in federal government contracting. "If the government orders a 'drastic modification' in the performance required by the contract, the order is considered a 'cardinal change' that constitutes a material breach of the contract. Such a material breach has the effect of freeing the contractor of its obligations under the contract, including its obligations under the disputes clause." Alliant Techsystems, Inc. v. United States, 178 F.3d 1260, 1276 (Fed. Cl. 1999)(internal citations omitted); see also In re Boston Shipyard Corp., 886 F.2d 451, 456 (1st Cir. 1989)("A cardinal change is considered a breach of the contract and therefore further work, even when a disputes clause exists, is not required."). "[This] occurs when the government effects an alteration in the work so drastic that it effectively requires the contractor to perform duties materially different from those originally bargained for. By definition,

3

then a cardinal change is so profound that it is not redressable under the contract, and thus renders the government in breach." AT&T Commc'n, Inc. v. Wiltel, Inc., 1 F.3d 1201, 1205 (Fed. Cl. 1993); Allied Materials & Equip. Co. v. United States, 569 F.2d 562, 563-64 (Cl. Ct. 1978).

The Subcontract at issue contains two clauses regarding disputes. The first is the standard federal contracting disputes clause, set forth at 48 C.F.R. § 52.233-1. Both parties agree that if the modifications at issue constituted a "cardinal change," MOPAC would be relieved of its obligations under this disputes clause.

The second disputes clause is contained in Paragraph 5.4 of the Subcontract. Global contends that this language abrogates the cardinal change doctrine. Paragraph 5.4 provides:

> Changes ordered by the Contractor shall be performed and paid for in accordance with the terms of the Prime Contract, the Project Schedule, and be subject to all rights of dispute and appeal as set forth herein, provided that reservation and/or exercise of such rights shall not interfere with progress of the work or in any way diminish, suspend, or abrogate Subcontractor's obligation to proceed diligently with performance of this Subcontract, notwithstanding <u>any change</u>, request for relief, claim, appeal, dispute or other action by the Subcontractor arising under or related to this Subcontract, and comply with any decision of the Contractor. <u>Under no circumstances, relating to a change order, or modification, shall Subcontractor have a right to suspend or discontinue performance of its work unless ordered by the Contractor.</u>

(emphasis added). Global argues that, through this paragraph, the parties contracted around the cardinal change doctrine.

MOPAC responds that a "cardinal change," despite the name of the doctrine, is not a "change" or "modification" in the typical sense of these terms, but is instead a "material breach" of the contract. This is the more well-supported position. Paragraph 5.4, on which Global relies, is in essence a disputes clause. Merely because all government contracts incorporate the standard federal disputes clause, does not mean that parties are not free to include additional language about disputes in the contract. And it is well-established that a cardinal change is a material breach of contract that relieves a contractor from its obligations under a disputes clause. The language of Paragraph 5.4, which refers merely to "changes" and "modifications" and not to a "cardinal change," is more reasonably interpreted to address changes generally redressable under the contract. Finally, Global offers no authority for the proposition that parties are free to contract around the cardinal change doctrine.

Therefore, Global's Motion in Limine is **DENIED** on this issue, and MOPAC will be entitled to raise the issue of cardinal change at trial.

2. Negligent Misrepresentation

Global's motion in limine also seeks to preclude MOPAC from presenting evidence on its counterclaim for negligent misrepresentation. Global essentially requests judgment as a matter of law, on the grounds that (1) Georgia law precludes fraud claims based on factual matters equally open to observation of all parties; and (2) MOPAC has not offered any evidence of "special relationship."

Global's objections are more properly raised in opposition to a fraud claim. A "special relationship" is not an essential element of the tort of negligent misrepresentation.[1] And although it may be relevant to the negligent misrepresentation claim if the facts were "equally open to observation of all parties," this is a factual issue that can be considered by the jury. Accordingly, Global's Motion to prevent MOPAC's claim for negligent misrepresentation is **DENIED**.

3. MOPAC's Indemnity Obligation to Merchants

Global seeks to exclude evidence that relates to the indemnity agreement between Defendant Merchants Bonding Company

---

[1] Negligent misrepresentation is a separate tort from fraud. Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc., 267 Ga. 424, 426, 479 S.E.2d 727 (1997); Restatement (Second) of Torts § 552. The tort of negligent misrepresentation has three elements: "(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." Hardaway, 267 Ga. at 426.

("Merchants") and Intervenor Defendant MOPAC. Global contends that MOPAC's exhibit list contains numerous exhibits that relate only to the indemnity question. The Court agrees with Global that evidence of the indemnity agreement between Merchants and MOPAC is not relevant to the contract dispute that the jury will be asked to consider. Therefore, Global's motion in limine is **GRANTED** as to the exclusion of evidence of the indemnity agreement.

4. Global's Profit

Global also argues that evidence regarding Global's projected profit of 53% on the subcontract is not relevant. However, this evidence is relevant for several reasons. For example, the large profit margin is relevant to MOPAC's claim that Global negligently misrepresented the scope of the work and that Global should have known that MOPAC was relying on insufficient information. Thus, Global's Motion in Limine is **DENIED** with respect to Global's projected profit.

5. Risks to the Government of Replacement of the Lightweight Concrete

Finally, Global seeks to exclude, on relevance grounds, evidence of the risks of replacing the lightweight concrete. Global maintains that the Government's decision to have the lightweight concrete replaced is not relevant to the question of whether this was required by the scope of the contract.

However, the nature of the lightweight concrete and its suitability as a "roof deck" is relevant to the issue of what constitutes a "roof deck," and this directly relates to the scope of the subcontract. Therefore, the Motion in Limine is **DENIED** as to the risks of replacing the lightweight concrete.

D.  **Defendant MOPAC's Motion in Limine**

1.  Exclusion of Plaintiff's Damages Materials

MOPAC has withdrawn its motion relating to Global's damages materials. This motion is therefore **DENIED AS MOOT.**

2.  Administrative Damages of $50,000

MOPAC maintains that Global has sought to add an untimely claim of $50,000 for "administrative" and "supervision" costs involved in supervising the contract after MOPAC stopped work. This amount is in addition to the $401,668 pled in the Complaint. MOPAC contends that this is effectively an amendment to the pleadings that should not be permitted. It argues that (1) Global's Complaint prayed for $401,668, and that this figure of alleged damages was the only one ever provided during this litigation; (2) Global's correspondence formally demanded only the $401,668; and (3) Global's Rule 26(a)(1) disclosures and responses to discovery requests only disclosed the $401,668 in alleged damages. For these reasons, MOPAC's Motion in Limine is **GRANTED** on this issue, and Global shall not be entitled to

8

introduce evidence of administrative damages in excess of those pled in the Complaint.

3. Deposition of Martin Morris

MOPAC has moved to preclude Global from reading portions of Mr. Morris's deposition during its case in chief. At the pretrial conference, MOPAC informed the Court that Mr. Morris will be present at trial and available to testify in person. Because Mr. Morris will be available to testify at trial, this request is **DENIED AS MOOT.**

4. Mr. Burnsed's Expert Testimony

MOPAC seeks to exclude the testimony of Mr. Burnsed, who it claims was not disclosed as an expert witness. Mr. Burnsed, who offers roof inspection services, performed an inspection of the roofs at issue in May 2002. He checked the condition of the roofs, made observational cuttings, and took photographs. In a written report, he recounted his observations and gave his recommendation that the lightweight concrete be removed. MOPAC asks that the Court exclude Mr. Burnsed's testimony because Global did not identify him as an expert witness under Rule 26(a) and did not file an expert report for him.

Global acknowledges that Mr. Burnsed is an expert in the roofing industry, but contends that he will only be called as a fact witness at trial. Therefore, MOPAC's Motion to exclude all of Mr. Burnsed's testimony is **DENIED.** Consistent with their

representations to the Court, however, counsel for Global may only call Mr. Burnsed as a fact witness, may not qualify him as an expert, and should take care not to solicit his expert opinions.

C. **Objections to Specific Exhibits**

In their Motions in Limine and in the Pretrial Order, the parties raise various objections to specific exhibits. The Court declines to rule on specific objections to exhibits at this time. If the parties are unable to resolve these remaining objections, the Court will rule on them at the time of trial.

**CONCLUSION**

As discussed above, Plaintiff Global's Motion in Limine is **GRANTED IN PART** and **DENIED IN PART**, and Defendant MOPAC's Motion in Limine is **GRANTED IN PART** and **DENIED IN PART**.

SO ORDERED this 15th day of June, 2007.

WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA